Ms. Cate, for the appellant. Ms. Bates, for the appellee. Ms. Cate, good morning. Good morning. Good morning, Your Honor. I'm Barbara Cate. I represent the appellant, and I thank the Court and Mr. Kramer for this appointment. My client, Mr. Brown, came before the District Court, prepared to admit his conduct and to accept, in all respects, the fact that Mr. Kramer is guilty. The punishment for not only the conduct for the charge of conviction, but also for conduct that he admitted to, that he had committed in the Commonwealth of Virginia. Mr. Brown was and is and remains within the heartland of offenders of this type. He is no less an offender of this type, but he is also no more an offender of this type. Nevertheless, the trial court sentenced him above what was determined to be the guideline range, and it is our position that the trial court did not make a record of sufficient reasons why it would go above the guideline range. There are only two reasons that can be ascertained from what we submit is an unclear record. One would be what the court cited as a sort of multiplier effect, that the court said that having fallen into three specific offense characteristics, that the three together provided a basis for going above what each of the three provided. We submit, Your Honor, that that is not sufficient as a reason to go outside the heartland of the guidelines. Either that's the reason, or there is some suggestion in the record that the trial court believed that the defendant had received what he called a pass for his conduct in the Commonwealth of Virginia. And that is simply not the case. He had agreed to and the guideline range imposed and proposed to him by the Department of Probation included a full five-level increase for the conduct that he admitted to in the Commonwealth of Virginia. So either if by mistake, believing that that particular enhancement had been eliminated, or by simply finding it inadequate, neither of those two reasons would have been sufficient for the trial court to have imposed a greater sentence than that in which the guidelines proposed for Mr. Brown. We believe that the record is insufficiently clear as to why the trial court chose to go beyond the sentence suggested by the guidelines. And therefore, we believe that the trial court fell short of its responsibility of describing why this defendant needed to be more severely punished than similarly situated offenders across the country or even in this jurisdiction. Interestingly, the parties engaged in a debate pre-sentencing in their papers as to whether or not the guidelines were actually too severe and whether some of the specific offense characteristics that were imposed here actually duplicate or merge together for offenders of this type and whether the guidelines really imposed too severe a sentence. The trial court never focused on that. The trial court pretty much, in a manner not adequately explained, and therefore I won't speculate as to why, but in a manner inadequately explained, said that the guidelines did not go far enough to punish Mr. Brown. Mr. Brown does... Let me ask you one thing about his finding about actual victims. What is your position on that, that he was wrong or that that shouldn't have been considered or what? I mean, that takes him out of the ordinary. If it can be considered, that takes him out of the ordinary. Cases across the country in which the five-level increase is imposed do impose that enhancement for offenders who have other multiple victims. The Seventh Circuit case that examined this looked to a position of authority and trust over the victims as opposed to the number of victims. The number of victims here I think that you could say were admitted to on the record were three additional actual victims. Of course, the solicitation was a sting, and so there was no actual victim there. The enhancement involved three victims, a daughter in a long-past event and two of his wife's granddaughters, which were perhaps more recent. All conduct for which the Commonwealth of Virginia had declined to prosecute, although arguably could with the new admissions that the defendant had made online with the undercover police officer, certainly could have been suggested anew for prosecution in Virginia. So he accepted responsibility for three other victims, which still doesn't place him outside the heartland of that particular enhancement. There is the Angle case where the distinction was made between family members and perhaps a priest who performs this kind of conduct in the Seventh Circuit. And there was a Sixth Circuit case in 2002 involving a grandfather where even where the state did move forward to prosecute, the district court imposed concurrent time given that it was imposing an enhancement. The trial court, when sort of pressed for findings here, really was more concerned with what ultimately was the number that was arrived at at the guidelines range, and not so much what the elements were that sort of helped arrive at that number. The guidelines provide for us a quantification of conduct for which reasonable minds might differ. This is clearly a subject matter of offender where people's sensibilities and experience could clearly differ as to what is a reasonable sentence. But the guidelines help us to sort of, as a society, quantify what our approach to this kind of should be. It's no different than our varying tolerance for guns or drugs. And certainly here, the public has an expectation of punishment. But what is it exactly? It varies. And the guidelines provide for us a baseline of where most heartland offenders come out. And I think what the record shows is that the trial court felt that Mr. Brown was not within that heartland. And in essence, he is. Like it or not, he is well within the heartland of what this kind of offender is. And so in the expectations of where he was when he came before the court, admitting to all that he had done and accepting every bit of what our structure allows for that punishment, it was not reasonable for the court to impose more, and certainly not without making that record. What's your position then about, because he did say, I'm trying to sentence people the same way my own sentence is, not necessarily, all right, now what's your position on that? I mean, in other words, it wasn't his heartland. It may have been heartland if you went beyond his sentencing. Well, you know, our case law has not eliminated the guidelines completely. We are not trying to create a consistency of a judge. We are trying to create a consistency of a system and a society and of all of our judges within a district and all of our districts within the country. And that he, that the trial court chooses to be consistent with his own sensibilities, his own personal tolerance for behavior, his own personal experience, does not meet his responsibilities under the case law to first at least accept what the courts have quantified as a reasonable sentence. And if he had then said, I do understand the elements of the sentence and where we get to these numbers, I understand them completely, but in my personal framework of acceptable behavior and my allowable discretion as a district court judge, I'm going to go beyond that, that would be a different case. That's not this record. This record doesn't reflect that at all. This record doesn't reflect really the elements of his reasoning or whether he even at any point sort of came to anything other than a number as opposed to a rationale for the number that justified the sentence. I see I've just run out of time, and I would like to reserve two minutes for rebuttal unless the Court has further questions. All right. Thank you. Ms. Bates. May it please the Court. Lauren Bates on behalf of Appellee of the United States. The district court did not err, let alone plainly err, in fashioning the sentence in this case. The district court judge clearly explained that he was considering appellant's conduct in fashioning the sentence that he imposed. Was he mistaken about whether the enhancement had been taken out in the revised plea bargain? He did say some things that would indicate maybe he was, didn't he? Looking at the record as a whole, I do not believe that it demonstrates that the district court judge was mistaken about which enhancement was removed, the substance of which enhancement was removed. I agree that there are two occasions where he misspoke and transposed the numbers 4 and 5 in referring to the point value of that enhancement. But if you start from the beginning here, which was the initial plea hearing that occurred and the discussion after that before the second plea occurred, there was a lengthy pretrial hearing where the judge was present and engaged in a discussion with counsel about the substance of the sadistic and masochistic conduct enhancement and why the facts in this case did not, in counsel's view, trigger that enhancement. So the court's aware of which enhancement's being removed and the reasons why. That discussion is repeated again at the time of the sentencing hearing where the judge is there participating in that discussion. And then even after the sentencing hearing, you have the judgment and commitment order accurately reflecting which enhancement was not applied. So I think looking at all of those pieces demonstrates that the judge was aware of what the appropriate guidelines calculation was and how he got there. One other point on that, which is Judge Land repeatedly confirmed that he was sentencing under a guideline range of 97 to 121 months. He wouldn't have gotten to that guideline range if he had been mistaken about which enhancement was removed because they were of different values. Counselor, the problem, the thing that concerns me is we have some pretty clear case law in this circuit. Warren, Ahigbe, Inres, Seale, which really confirms what the statute says, that in this kind of a situation the district court has to give clear oral and written explanation for this kind of a sentence. This explanation in this case, you're smiling because you know where I'm going, it's not close to Warren, Ahigbe, Inres, Seale, law of the circuit, all three of those panels said the same thing. The statute says what it says. The district court has got to explain it. All the district court said here was defendant transmitted child pornography in the state via the internet, engaged in predatory behavior and had actual hands-on victim. Court also referred to pertinent factors under 3553A. It said the same thing in the oral. That isn't even close to what we require. Not close. It's not even in the league. You agree there's a great disparity between what the district court did here and what we have required, right, and what the statute requires. I do not believe that with respect to the oral sentencing transcript, which is the judge's initial pronouncement of the hearing, that Judge Leon went through much more than just that. Counsel, you said the oral statement. You agreed in your brief that the oral statement simply repeated the written statement. They were essentially the same. And neither one says anything, right? I respectfully disagree with you on that. Didn't you say that? The oral statement. Didn't you say that? You acknowledged that. They're essentially the same. So I think that they hit the same core substance. Which is nothing. It's taken account of by this. I mean, you had to know these questions were coming, and I would have thought you would have said, well, you're right, Your Honor, maybe just remand it and let the district court attend to what he should have attended to. He didn't do here what the law requires him to do. And I agree to the extent that you disagree and this court disagrees, a remand is what would be appropriate. But here I think looking at what occurred at the sentencing hearing, Judge Leon repeatedly explained in more detail than what's reflected in the judgment and commitment order the concerns he had about the conduct in this case. He discussed how there was a pattern and practice of abusing young children, and he focused on that aspect over a long period of time. And the three points that he hits in the judgment and commitment order are something that he explained at the oral sentencing, took this out of what he had viewed as the typical or usual case. He explained that he viewed this case as a very unusual case, where there was not only the conduct that was, you know, distribution of images, but there was solicitation of a minor using the Internet, plus there were these hands-on. It's all taken account of by the guidelines. So, no, I don't know that that is all taken. They're all taken account of by the guidelines, and if they weren't, then he should have said they're not taken account of by the guidelines, because I don't see how they're not. Well, the guidelines, to the extent that Your Honor is referring to the five-point enhancement for the pattern of conduct, that enhancement does not specify what type of conduct may form the basis for the enhancement. What did he say in the written? All I'm doing is focusing on the statute in our case law, which I think is pretty clear. I'm not assessing what this man did. The statute and the case law say you have to give explanations, and there are no explanations given here for why he was prepared to go beyond and go where he did. Again, I would just refer the Court to the fact that the judge repeatedly discussed the conduct, felt that that justified a sentence outside of the guideline range because it was a need to impose punishment and deterrence for an individual who had admitted to this pattern of conduct that's not only enough to justify the five-point enhancement, but is a pattern that in the Court's mind was significant because of the fact that it encompassed not one type of modality of committing these crimes, but all three that the Court says is rare and unusual to see. I mean, I thought in your brief you wrote an excellent explanation for the district court judge. The problem is the district court judge didn't follow your explanation. Yeah, you assessed the case the way a district court judge ought to have assessed it. That's not what he did. Well, I would just refer the Court to the three different instances where the judge did talk about the reasons for viewing these three types of conduct differently, and that's pages 5 and 6 of the transcript, again at pages 7 and 8, and again at page 35 where he kind of wraps it up saying this is not the conduct we normally get. We don't get a lot of cases around here. The fact that the D.C. Circuit doesn't get a lot of these cases, so what? I'm not sure what that, it's this type of case nationally. The fact that the D.C. Circuit doesn't see it, thank God, it seems to me is not relevant to anything. And the fact that the judge doesn't see it a lot is not relevant to anything either. So what? I'm not getting it. You're right. That's exactly what he said. That's not what Warren, Higbie, and Ray Seald require. Again, I would say focusing on those three different incidents, and then the judge also another reason for the sentence that he imposed in this case that he discussed at great length at the oral hearing was the fact that there was not only conduct that justified the pattern of conduct enhancement, but that there had been a declination of prosecution for that conduct. The pattern of conduct enhancement does not require that there be a conviction for the conduct that gives rise to it. But in many cases there are prior convictions, and that's what the court looks to to establish that pattern. Here, the appellant, in fact, had admitted to the conduct and was receiving the benefit of a declination of prosecution, no prosecution for that conduct, no additional sentence that would ever be imposed for that conduct. And the court was taking all of that into consideration, the nature of the conduct. Did he clearly explain that that's what he was doing? Look at his written statement and answer the question. It may well be he could do precisely what he did here if he explained it with sufficient clarity. This is not a hostile question. This is just a question. Is there a sufficiently clear explanation that that's what he was doing? I think that looking at the entirety of the transcript, I would submit that it is sufficiently clear to explain to the extent that this court disagrees. A remand would be what is appropriate in this context. But again, looking at the discussion, which spanned almost 40 pages of the court trying to grapple with the allocutions he was receiving and explain his thought process and why he didn't think that 121 months was an appropriate sentence to provide the type of punishment and deterrence that was warranted under the facts and circumstances of this case. Thank you. Unless there are any further questions, we'd ask that the judgment be affirmed. All right. Thank you. Okay. Why don't you take one minute? I'm sorry. I misread the clock, ma'am. I just wanted to make two points. One is that although the district court may have thought it was unusual to see these three factors together, that actually probably is objectively and subjectively untrue. If you examine probably the type of offender who's caught in the net of these stings, you would probably find that nearly all of them have done some form of molestation and are attracted to pornography. There is nothing so significantly unusual about the cluster of these three factors that takes this out of the heartland. And I would also only quarrel with one other point in rebuttal, and that is that the district court said numerous times that what it was offended by was that, and it kept using the word, that the defendant got a pass. He got a pass on his conduct in Virginia, and that's simply not true. A five-level enhancement is not at all insignificant. It is a very significant enhancement. What is significant is what could have been done to amend the Virginia law. That's true. But it also did save some young lives the trauma of having to actually come forward in order to exact that type of punishment. That's a different question. That's true. Unless there's anything further, I thank the court. Ms. Patel, you were appointed by the court to represent Mr. Brown. We thank you for your very able assistance. You're very welcome. Thank you.
judges: Henderson, Edwards, Sentelle